All right. I hear L.M. v. Graham and Sheldon. May it please the court, John Sheldon for L.M. L.M. sued Graham for malicious prosecution. Graham moved to dismiss and the district court erroneously granted the motion to dismiss. And L.M. has appealed that motion to dismiss ruling. Just to note, there were a lot of other plaintiffs. There's two other plaintiffs. There's a lot of other defendants. This does not involve any of them. L.M. and Graham is all that this one involves. L.M. alleged in his complaint that Detective Graham learned that he, L.M., had a complete alibi. Learned it from staff at the school that he was a music class, not in the gym where the assault occurred. Nevertheless, Graham provided the judicial intake officer an incomplete and false set of facts in support of Graham's request for an arrest warrant. L.M. was arrested. And then the Commonwealth moved to dismiss with prejudice, noting L.M.'s incomplete alibi that he was in another class. That is sufficient to survive a motion to dismiss for malicious prosecution. L.M. needed to allege cause. Cause, Graham would have been protected if he had revealed all to the judicial intake officer. But he didn't. He misled the officer, we alleged, by providing an incomplete and false set of facts. That did not inform the judicial intake officer of the complete alibi of L.M. that L.M. was in a music class. One question. When you went before, Mr. Graham, I guess, or L.M. went before the judicial intake officer in the proceedings before the judicial intake officer? Judge Wilkinson, in Virginia, in a juvenile detention petition, that's an ex parte event in which L.M. was not aware and did not participate. It was an ex parte proceeding in which Graham went to the judicial... But I need you to answer my question directly. Was this alibi offered to the judicial intake officer? And I gather your answer is no. No. Was there an opportunity to provide that alibi to the judicial intake officer? No. Why was there not an opportunity if you wanted to? Once you were detained pursuant to a juvenile petition, you go to court. He did go to court and he got a dismissal. He was detained overnight, went to court, got a dismissal, Judge. But the proceeding before the judicial intake officer obviously had a good deal of bearing on any kind of future suit like this, any kind of future malicious prosecution suit. Judge Wilkinson, perhaps I don't understand your question because we're misunderstanding the procedure. This is not a procedure at which a petitioner, a juvenile, or his attorney ever participates. There's no opportunity. We don't know of it. We're not told of it. We're arrested and we're put in jail. L.M. knew of this when he was arrested. When he was arrested, there was no opportunity to go to the juvenile intake officer and say you've done this wrong. Instead you go to court, juvenile court, and that's what L.M. did. He took advantage of all the procedure he had and he won. So the causation, if Graham had given the judicial intake officer full facts, even facts that did not amount to probable cause, he would be protected because he gave all the facts to the judicial intake officer. We allege he did not. That he misled the officer and so he caused the detention. One, causation. Two, seizure of L.M. pursuant to unsupported probable cause. We allege that Graham learned from school officials that L.M. was not in the PE class. We allege that photographs were shown to the witness and the witness said L.M. is not in the photographs, photographs of that gym class. Again confirming. And we allege that this alibi that Graham had learned prior to going to judicial intake, this alibi Graham learned was complete. That his school staff said L.M. was in a music class and could not have been in that gym class where the abuse occurred. So the seizure was pursuant to unsupported probable cause. Then the criminal proceedings, third element, were terminated in L.M.'s favor and, not an element, but notable, terminated because the prosecutor said in her written request to dismiss with prejudice, L.M. has a complete alibi, he was not in the class. That's all we have to allege to defeat a motion to dismiss in a malicious prosecution case. The defense, well, let me start with the district court, really relied heavily on that Graham was not the cause of the detention of L.M. And of course he was. Of course he was. This court has many cases and Evans v. Chalmers is the most apropos case that this court has that says that a police officer is absolved of the cause of even if it's wrong, even if it doesn't amount to probable cause, that officer is protected when he provides full information to a judicial officer. In this case, we clearly allege that Graham did not. He misled the juvenile intake officer by failing to provide this complete alibi. We believe L.M. wouldn't have ever been arrested. But Graham would have been protected if he had just done that. And he wouldn't have been the cause. But he was the cause. And the district court was wrong not to give credit to this court's case, Evans v. Chalmers. Your Honors, unlike the previous cases you've had where there was a habeas case with a trial, there was summary judgment in 1983, this is a motion to dismiss. It's simple. We obviously made it. The court's mistake is obvious that it said that Graham didn't cause the detention. The court is obviously wrong because we allege Graham misled the intake officer by failing to provide this alibi. And we'd ask if you have no further questions that you overturn the decision of the district court and send this back. Thank you. Good morning. May it please the court, my name is Heather Bardot and I have the honor of representing Detective Jonathan Graham this morning in connection with the appeal before you. As counsel for L.M. indicated, Detective Graham has been sued by L.M., a juvenile, for malicious prosecution under state law and under 42 U.S.C. section 1983 which is treated as a Fourth Amendment seizure claim. Detective Graham challenged the claims by filing a 12B6 motion to dismiss and the district court granted that motion on three grounds, finding that there were probable causes for the charge that was brought against L.M., that Detective Graham was entitled to qualified immunity and that the allegations in the complaint did not establish the causation prong for a malicious prosecution claim. L.M. challenges each of those findings contending that the district court's decision should be reversed. I would submit that the appeal is without merit. What I think is interesting as has been done in briefing and as was done in briefing below is counsel for L.M. alleges facts that are not in the complaint to try to convince the court to reverse the district court. In this particular case, what happened was there was a complaint that was filed which clearly had a misunderstanding of how things proceeded. But fortunately for my client, that complaint cited to a number of things. It cited to the recorded interview that was done of the victim, Y.A., and it relied upon it. And it cited to the statements that were given by the child who brought to the attention of the school that Y.A. was being sexually abused by L.M. and two others. And it cited to it. And it cited to the alleged charging documents by detectives. The schools have a terrible problem of bullying. They have a terrible problem of sexual bullying. And you read accounts of that all the time. I am concerned that if we reverse here, we're making it much more difficult for school systems and others to address problems which occur on school grounds every day. And a lot of times it may be, in fact, transgender students that are the subject of a great deal of bullying. And what you have is you have, in many cases, the authorities need to rely, it's unfortunate, but they need to rely on witnesses who are not fully adult witnesses. In this case, the witness was an 11-year-old who twice provided the information. And these, even though they're 11-year-old and the rest, they know the identity of their peers. It's not a, L.M.'s identity was not a mystery to A.D. And so if we dismiss, if we discount A.D.'s advice or his report, then you're discounting all kinds of reports of students who are sexually bullied in class, I mean in places, and include transgender students who are a chief target of that these days, regrettably and unfortunately. And as I say, you have to sometimes rely on teenagers or whatever to give you these sorts of accounts because you just don't have, they know who their peers are very well. That's true. And especially in a situation like this where the allegations of the sexual assaults, and they weren't one. So this notion that there was a complete alibi, which by the way, the record shows wasn't even brought to the attention of Detective Graham until after he had submitted the documentation to intake and intake had made a probable cause finding. But putting that aside, the fact that these multiple assaults over multiple occasions that were witnessed by A.D. happened in a locker room means that they happened in an area that's not under any kind of video surveillance. So the only thing you're going to have is witness accounts. And so what the district court had before it when it made a determination on this case was not as has been represented by counsel for L.M. What the district court had before it, because it relied on documents that were central to the complaint or referenced in the complaint, were the interviews of A.D. and Y.A. and additional information. And so what did the interviews from A.D. say? The first interview from A.D. gave... The other thing is that the victim in this case was an autistic child. And being an autistic child, he was really disabled in his ability to push and report these things himself. Autism does not give rise to free expression. And so the victim was an autistic child. And he had to rely on someone like A.D. who saw him being taken advantage of. Right. And Y.A. did not make the report. That's exactly how it happened. A.D. made a report to a neighbor child. That neighbor child went to Y.A.'s brother. Y.A.'s brother brought it to the attention of the school. All of that was before the court when it decided the motion to dismiss. And with that, you know, the first interview of A.D. happened. And A.D. was very clear during that interview. And he identified three boys, L.M. and two other boys. He could not remember their last names at that time. But he gave very particular accounts of multiple occasions of sexual abuse of Y.A. We're talking about the most vulnerable populations. We certainly are. In a school setting. If there are two more vulnerable populations than transgender students and autistic children. Yes, Your Honor. And what I would say is that after Detective Graham got this information from A.D., he didn't just go at that point and take it to the Assistant Commonwealth's Attorney. He had no charging power. He had to go through the Assistant Commonwealth's Attorney into intake. What he did after he got the first names of these children was he went to the school and he got photographs for kids who would have been in that particular class on that particular day, putting aside the other assaults which were alleged to have occurred. And when he did that lineup for A.D. during a forensic interview because he was brought back in, A.D. was able to identify the two other plaintiffs who have not filed the appeal and he did not see a photo of L.M. But what he told Detective Graham was that L.M. was a kid whom he had had a dispute with earlier in the year on a bus and he had made a report to the school that he was being bullied by L.M. So what did Detective Graham do? The responsible thing? He went to the school and he said, can you tell me who that kid was that the report was made by A.D. earlier in the year? And when the school identified him, it was the kid with the same first name that A.D. had identified. He didn't just fly off the handle? Absolutely not. As much as the district court realizes, he was much more deliberate and he went about it methodically. Right. I just want to say that I do not want the law to leave autistic children and transgender children who the chief targets today of sexual bullying in schools, and I do not want to leave them defenseless by saying that someone like the defendant in this case could not, despite the steps he took and despite also the fact that he relied on a peer witness, they have to sometimes. It's the peers, it's the 11-year-olds and 12-year-olds who understand what's going on among their peers. Right. And so I just don't think you can dismiss it by saying, oh, A.D. was only 11 years old. And they know who their peers are and they are able to spot these kinds of things where disadvantaged children are being taken advantage of. Right, and even after A.D. had identified the three boys, it was thereafter, and the record is clear on this, that Y.A. was then brought in, and he wasn't even interviewed by Graham. He was interviewed by someone who is a professional trained to interview young children who have some disability and need special kid gloves. And during that interview, Y.A. had difficulty expressing himself, but he was able clearly to say that when he was in the locker room, there were a number of boys who were, and this is the term he used, S.E.X-ing him. And that's the way he referred to it, which is why you'll see it that way in the briefs. And he was asked, who are these boys? And he goes, I don't know their names, but A.D. can identify them. Well, A.D. did identify them. And so that's the information. That's the totality of the information that the record before this court clearly shows that Detective Graham had. And with that information, having very positive I.D.s, with very horrific sexual harassment, holding this boy against the wall, fondling his genitals, taking him into locker rooms where he'd go in, closed stalls where he would go in with clothing on and come out with no clothing on his bottom half. He took it to the assistant commonwealth's attorney, and he said, here's what I have. He was then directed, Detective Graham, to take it to juvenile intake, and that was it. Detective Graham did not charge these boys. He had no authority to under 16.1-260 of the Virginia Code. It was the juvenile intake officer and the juvenile intake officer alone who had to make the probable cause determination and file the petitions. And I would note that in the pleadings and the complaint before the court below, there's no allegations such as what you hear here today, that Detective Graham lied to the juvenile intake officer or provided incomplete information to the juvenile intake officer. There's no mention of a juvenile intake officer at all in the pleadings. All I know is that when you have an autistic child and he is on top of the autism, he has been subjected to the kind of heinous acts and to read exactly the sexual abuse to which this person was objected. Any initial problems he had by virtue of his autism were compounded by the trauma he suffered in what were absolutely heinous acts of sexual assault. And the defendant here, as the district court recognized, did not just fly off the handle. He was pretty careful about it. And to say that this is a malicious prosecution, there's nothing malicious about it. He was trying to make sure that a kid got the bullying stopped and that a signal was sent. We don't do this to our fellow students. Right, and so if Detective Graham had made a probable cause determination, which he did not, because that was not his role, he was not the charging officer, but if he had made a probable cause determination under the law, under the Caley case, which is 571 U.S. 320, all that means is that there had to be a fair probability that the crime had been committed. It is not a preponderance standard. It is not a more likely than not standard. The Texas v. Brown case out of the Supreme Court makes that clear. The U.S. v. Humphreys case out of this court makes that clear. Is there a fair probability? And it's not a weighing of the evidence. It's not a credibility determination. It's like, is there evidence to show that this crime had been committed? And so at the time he took his file to the juvenile intake officer, I would suggest that it is impossible not to find that there was a fair probability that this crime had been committed by LM. You've got an eyewitness who has identified him specifically. He has said that this was the kid he had a problem with earlier in the year. It has been satisfied through the school system who has no dog in the fight who that kid was. The crimes that were described were sexual in nature. There's not even any dispute about that. And it's not a high bar, this probable cause determination. And so if down the road additional information is learned, defenses are raised, there's other evidence that comes into play, that's fine. But it doesn't defeat the probable cause determination. So I would submit that the district court's determination on that point was correct. The qualified immunity ruling followed from that decision. On this causation issue, again, I would submit that the district court got it right. The allegation or the argument that we now hear from the plaintiff is, well, causation isn't severed if the allegations are that Detective Graham lied to juvenile intake. Again, I would point you all to the complaint itself, and you will nowhere find, as the district court held, that allegation in the complaint. The complaint, which was considered in addition to the documents, the extrinsic documents that the court found that it could consider, clearly shows that Detective Graham made no probable cause determination. He took his file to the juvenile intake officer. There's no allegation that he lied to that person or pressured that person because the complaint didn't even understand how the process worked. And when he submitted his file to that person, they made the determination, and they filed the petitions. And so I would submit the district court got it right when it found that Detective Graham didn't have any control over the decision whether to prosecute or not. He was not a proximate cause of that at all. And so I would submit that there's nothing that was erroneous about the district court's decision in this case. There was probable cause. Do you have anything further? No. Hold on. Let me just see if my colleagues have some questions.  Bob, do you have a question? I'm fine. Chief, do you have a question? Thank you. We don't have any questions. Thank you. May it please the Court. I don't think there's any doubt that anybody involved here thinks the 11-year-old was correct. Everybody knows, and Graham knew, and we allege that Graham knew, that the 11-year-old had falsely accused L.M. of bullying previously. Falsely accused. We allege that Graham learned that the 11-year-old falsely accused L.M. before he went to the judicial intake officer. J.A. paragraph, J.A. 20, paragraph 30-32. We allege, this is completely contrary to Graham's counsel, we allege in our complaint at J.A. 24, paragraph 53, that Graham learned from the school officials after the 11-year-old went to him. Graham's counsel told you that then Graham methodically went to the school officials. He did. And what did he learn before he went to judicial intake, we allege in our complaint? We allege that Graham learned two things. He didn't rush. He was methodical. Actually, he learned three things. He learned that the 11-year-old had falsely accused L.M. previously, one. Two, he learned that there's a picture of the kids in the P.E. class. He brought that picture to the 11-year-old, and the 11-year-old identified the other two kids but not L.M. Three, Graham was methodical. He didn't rush to judgment. He learned from school staff that L.M. was in a music class at the time of this P.E. class and couldn't have been involved. And we allege very clearly, J.A. 20, paragraph 31 to 33, J.A. 24, paragraph 53, that Graham learned all this prior to going to judicial intake. Went to judicial intake and omitted this. I did not get that from Graham's counsel's argument, that she told you that Graham learned all this in his methodical investigation prior to going and getting the arrest petition. And that's what we allege in our complaint. And I just want to give you a small bit of background. This was a juvenile criminal proceeding at which we, as later counsel, had no access to anything. We have still had no access to the juvenile criminal proceeding. We have had no access to school officials. Any extra facts we learned, any recordings, came after our complaint from Graham. And this is why we did not appeal very correctly, Judge Wilkinson, the other two petitioners. Because there were facts that these two, that Graham could have found probable cause against the other petitioners. Not against L.M. Again, this is so, it's really surprising to me that there's a supposition in this court that we didn't put in our complaint that Graham learned all these things in his methodical investigation, that an 11-year-old was a liar, that he couldn't identify L.M., and that staff told Graham prior to judicial intake that L.M. couldn't have been in the gym and done this. Graham learned all that. That's all in our complaint on J. 20 and 24. And that's surely enough for a motion to dismiss. So we ask you to reverse. Thank you. We'll come down and greet counsel, and then we'll proceed into our final case.
judges: J. Harvie Wilkinson III, Robert B. King, Roger L. Gregory